LAURA E. WILLIN

*v.*

JOHN W. BURDETTE *et al.*

172    117
78a 371

172    117
201    ² 89
103a  ²244

*Opinion filed February 14, 1898—Rehearing denied April 6, 1898.*

1. ATTORNEYS AT LAW—*relation of attorney and client does not necessarily terminate with obtaining of decree.* Obtaining a decree of divorce does not terminate the fiduciary relation between the complainant and her solicitor, where the solicitor continues to attend to the arranging of property matters between the complainant and the defendant; and a deed made during that time by the client to her solicitor is made while the fiduciary relation exists.

2. SAME—*client, on seeking to set aside deed to attorney, is not required to show fraud.* A client seeking to set aside a deed made by her to her attorney during the existence of the fiduciary relation is not required to show fraud or imposition,' but the burden is upon the attorney to show fairness, adequacy and equity, and upon his failure to do so a court of equity will regard the transaction as constructively fraudulent.

APPEAL from the Superior Court of Cook county; the Hon. H. V. FREEMAN, Judge, presiding.

CHYTRAUS & DENEEN, and OLAF E. RAY, for appellant:

Dealings between an attorney and his client are held, as against the attorney, to be *prima facie* fraudulent; that is to say, the burden is not upon the client to establish fraud and imposition, but the burden rests upon the attorney to show fairness, adequacy and equity. *Morrison* v. *Smith*, 130 Ill. 304.

The burden is on the attorney to affirmatively establish the most perfect good faith. *Roby* v. *Colehour*, 135 Ill. 300; *Jennings* v. *McConnel*, 17 id. 148.

Upon bills to set aside deeds from a client to the attorney the rule *in pari delicto* does not apply, and it is for the attorney to establish that the transaction was fair, and that he did not take advantage of the client's complaisance, ignorance, confidence or misconception. *Place* v. *Hayward*, 117 N. Y. 487.

An attorney cannot, during the existence of the relation between himself and client, make a binding contract to secure greater compensation for his services. Weeks on Attorneys, 364.

JOHN W. BURDETTE, for appellees:

The relation of attorney and client ceases with the end of the litigation for which the attorney was employed. *Walradt* v. *Maynard*, 3 Barb. 586; *Adams* v. *Bank*, 23 How. Pr. 45.

After the litigation is completed the parties stand as strangers, and their transactions will be impeached only as other transactions between persons not in confidential relations. Bigelow's Eq. sec. 142; *Preston* v. *Williams*, 81 Ill. 176; *Phillips* v. *Overton*, 4 Hayw. 291; *Wharton* v. *Hammond*, 20 Fla. 934; 1 Story's Eq. Jur. (13th ed.) sec. 313.

Fraud or undue influence, to avoid a deed, must be directly connected with the execution of the instrument. *Guild* v. *Hull*, 127 Ill. 523.

All necessary findings will be presumed to support the decree. 2 Ency. of Pl. & Pr. 489; *Railway Co.* v. *Aldrich*, 134 Ill. 9.

A consideration being expressed in the deed, the grantor is estopped from alleging that the deed was executed without consideration. 1 Devlin on Deeds, sec. 823.

Confirmation and ratification of a voidable transaction will establish it and make it valid. *Eberstein* v. *Willets*, 134 Ill. 101; Pomeroy's Eq. Jur. (2d ed.) sec. 964.

The decision of a chancellor who hears the witnesses orally in open court, and who is thus enabled to judge of their credibility when the evidence is conflicting, will not be disturbed. *Franklin* v. *McDonald*, 163 Ill. 139.

Mr. JUSTICE CRAIG delivered the opinion of the court:

This was a bill brought by Laura E. Willin, against John W. Burdette and Michael G. McGuire, to set aside a deed executed by the complainant to said defendants,

wherein she conveyed to them a certain lot in Chicago which she obtained from her husband under a decree for divorce. The defendants were attorneys for the complainant in the divorce proceedings, and it is alleged that the deed was obtained without consideration and by the abuse of the confidential relations existing between attorney and client.

It appears from the record that the complainant had trouble with her husband and sought redress in the police court, where she was introduced to McGuire as an attorney, and he took her to Burdette, and she employed Burdette to procure for her a divorce and the custody of a small boy, her only child. She testified that the defendant Burdette agreed to attend to the divorce case for her for the sum of $50. On the other hand, Burdette set up in his answer and testified on the trial that complainant agreed to pay him for his services in the divorce case a retainer of $50 in cash, and in addition one-half of all money and property recovered or obtained of the defendant in the divorce proceeding. The bill for divorce was filed about the middle of May, 1896, on the ground of cruelty. The case was prepared for trial, but on the 12th day of November the parties, through their attorneys, came to an agreement, under which a decree for divorce was obtained. Complainant was given the custody of the child, and the defendant was decreed to convey her two certain lots in Chicago as alimony, and $35 was awarded as solicitor's fees. On the 20th day of November, 1896, appellee Burdette demanded a deed of appellant for one of the lots, in payment of solicitor's fees in the divorce proceeding. The appellant executed the deed, and on the 21st of the following month filed this bill to set aside the deed. On the hearing, on the pleadings and evidence, the court entered a decree dismissing the bill for want of equity, and complainant appealed.

The first question to be determined in this case is, whether the relation of attorney and client existed be-

tween the attorney, Burdette, and the appellant, Willin, on the 20th day of November, 1896,—the day upon which the deed in controversy was executed. As has been seen, the decree for divorce was obtained on the 12th day of November, and Burdette contends that the relation of attorney and client then terminated. We think, however, it is apparent from the testimony of Burdette himself that the relation of attorney and client did not terminate on that day. He testified that after the decree was signed, Mrs. Willin, her father and mother, and a number of others, all went over to his office. He further testified: "There was no attempt at settlement of her business affairs that day. The parties all went home, and I notified Mrs. Willin, my client, a few days afterwards, to come to my office and execute the deeds to the property. The decree vested these lots in her and other lots in Mr. Willin. I proposed to have her execute a quit-claim deed to the property of which she was divested, and he would execute a deed to her. The decree had then been entered. I think the day she came in I delivered a copy to her. She came in on November 20, with Mr. Petterson. Mr. McGuire was in, talking to me, when they came. I showed her the two deeds, and I said I thought she ought to make a deed to Mr. Willin and she ought to make a deed to me and Mr. McGuire."

From this evidence it is apparent that Burdette regarded it as a part of his duty in the divorce case to see that the defendant in the divorce case should deed to complainant the lots decreed to her, and that she should deed property to defendant which was provided for in the decree. In the discharge of that part of his duty as an attorney he prepared and handed appellant, on the 20th day of November, a deed to be executed to her former husband, and at the same time he requested her to execute the deed in controversy. Moreover, his statement of account to appellant, showing the amounts received and disbursed in payment of costs and other purposes,

was not rendered until November 27,—seven days after the deed in controversy was executed. We think, therefore, from the facts as shown by the record, that Burdette was still attorney for appellant when she executed the deed purporting to convey the lot in question to him.

The relation of attorney and client existing between the parties when the deed was made, the next inquiry is, whether, under the facts as they appear in the record, the deed can be sustained. The appellant, being a client when the deed was made, was not required to establish fraud or imposition in order to defeat the instrument. The relation having been shown when the deed was executed, the burden of proof rests upon the attorney to show fairness, adequacy and equity, and upon failure to make proof, a court of equity will treat the case as one of constructive fraud. (*Jennings* v. *McConnel*, 17 Ill. 148.) This rule was followed in *Morrison* v. *Smith*, 130 Ill. 304, and *Ross* v. *Payson*, 160 id. 349. In the *Morrison case*, Weeks on Attorneys and Counselors is quoted with approval, as follows (p. 316): "The attorney who bargains in a matter of advantage to himself with his client is bound to show that the transaction is fair and equitable; that he fully and faithfully discharged his duties to his client, without misrepresentation or concealment of any fact material to the client; that the client was fully informed of his rights and interests in the subject matter of the transaction and the nature and effect of the contract, sale or gift, and was so placed as to be able to deal with his attorney at arm's length."

It may be conceded that an attorney is not prohibited from purchasing property from his client where the transaction is fair and honest, and not tainted with fraud, undue influence or corruption. (*Laclede Bank* v. *Keeler*, 109 Ill. 385.) But, under the law as established in the authorities cited, can the deed be sustained? As has been seen, appellee Burdette claims that he was entitled to the deed under the contract made with appellant, to the effect

that he was to be paid a retainer of $50, and in addition was to have one-half of all money or property obtained in the divorce proceeding from appellant's husband. Burdette testified to the contract, but he is not corroborated by any other witness. His co-defendant, McGuire, in his testimony corroborates Burdette as to the retainer of $50, but, as we understand his testimony, goes no further; while, on the other hand, the complainant expressly denies the contract claimed by Burdette, and testifies that he agreed to take the case and prosecute it to a final termination for $50. So far, therefore, as reliance is placed on proof of a contract under which the deed was made, the evidence does not seem to preponderate in favor of Burdette.

Evidence was also introduced for the purpose of showing what the services rendered were reasonably worth. Appellees testified that $500 would be a reasonable fee, and T. J. Lumbard, an attorney, testified that $350 to $400, in his opinion, would be a reasonable fee. On the other hand, E. H. Taylor, an attorney in general practice, testified that $75 would be a customary fee; and Pease and Knecht, two attorneys in general practice, testified that $100 would be a reasonable and customary fee, so that the evidence, in view of the testimony on the value of the services, preponderates against appellees. It appears from Burdette's own statement of account furnished appellant, that he has received in cash, over and above all money paid out, the sum of $104.52. Having received this sum, under the preponderance of the evidence he was paid all his services were worth at the time he procured the deed from appellant. After having received what his services were worth, he demanded a deed of appellant of the lot in controversy, and, as she testified, threatened to make her trouble unless she made the deed. True, Burdette denies the threats; but it is apparent that appellant did not willingly make the deed, otherwise she would not have filed a bill to set it aside so soon after it was

executed, the bill having been filed only thirty-one days after the deed was made.

Does the transaction show fairness, adequacy and equity, as is declared essential in *Jennings* v. *McConnel, supra,* to sustain a conveyance where the relation of attorney and client exists? We do not think it does. Under the evidence we see no ground upon which the deed can be sustained. The appellant was ignorant of her rights. She was uneducated, not being able to read or write, with the exception of being able to write her own name, and if appellee Burdette had fully informed her of all her rights, as it was his duty to do, it is apparent the deed never would have been executed by her.

The decree will be reversed and the cause remanded, with directions to enter a decree in favor of complainant, as prayed for in the bill.

*Reversed and remanded.*