## Margaret H. Boyle v. Frederick P. Read.

### Gen. No. 13,559.

1. ATTORNEY AND CLIENT—*when contract presumptively fraudulent.* A contract made by an attorney with his client in relation to an interest to be acquired by him in the subject-matter of pending litigation is presumptively fraudulent, and the burden is upon the attorney to prove the fairness of the contract, the adequacy of the consideration, and that it was in all its essential and material parts equitable and that no undue advantage growing out of the relationship of attorney and client has been practiced in its procurement.

BROWN, J., dissenting.

Assumpsit. Appeal from the Superior Court of Cook county; the Hon. BEN M. SMITH, Judge, presiding. Heard in this court at the March term, 1907. Reversed and remanded. Opinion filed December 23, 1907.

WICKETT, MEIER & BOOTH and DAVID S. WEGG, for appellant.

ELBRIDGE HANECY, for appellee.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

The relation of attorney and client existed between the parties to this record, and the controversy grows out of the claim of appellee, the lawyer, for his fees for legal services rendered appellant, the client.

That appellee was the lawyer of appellant and rendered efficient and valuable legal service in matters of importance, and that much time and ability was expended upon the affairs of appellant, which finally re-

sulted in a settlement of the controversy for the sum
of $21,500—terms satisfactory to appellant—is not de-
nied. The decisive question is one of law. It does
not rest for determination upon controverted evidence,
but upon the law to be applied to the enforcement or
not of the contract in relation to fees, which appellee
in his testimony claims he made with appellant and in
faith of which he bases his right of recovery. We shall
therefore confine our opinion to an interpretation of
the contract for compensation contained in the proof
of appellee, and determine its effect upon his claim.

The trial in the Superior Court resulted in a verdict
and judgment of $9197.71, to reverse which this appeal
is prosecuted and errors duly assigned upon the rec-
ord, two only of which are material to be considered
in the conclusions to which we have arrived.

Appellant is the widow of David Boyle, who in his
lifetime manufactured ice making and refrigerating
machines. Some of the machines and their operating
mechanism had been patented by Boyle. While Boyle
had no manufacturing plant of his own, he filled or-
ders for machines by having them constructed by
manufacturers. In this way he had built for the meat
packers, Nelson Morris & Company, upon their order,
several machines which were installed on ocean going
steamships carrying the Morris Company meat prod-
ucts. Boyle at the time of his death had claims
against Morris & Company for money due for ma-
chines so furnished. Appellant was the sole benefici-
ary under the will of her husband. Nelson Morris &
Company interposed many defenses to these claims,
and they were eventually filed in the estate of David
Boyle as desperate, under the statute. Thereafter the
estate was settled in the Probate Court. This still
left to appellant as executrix and sole beneficiary un-
der David Boyle's will, the right to prosecute such
claims in the courts of this state. After having tried
lawyers other than appellee, appellant in December,
1894, employed appellee to enforce these claims

against Morris & Company. Appellee commenced and maintained from that time forward until a settlement was obtained in June, 1905, a vigorous and effective legal campaign against Nelson Morris & Company. The first aggressive step taken was the institution of a suit against the Morris Company, which was pending for more than ten years, when it was settled by a compromise of all claims for $21,500.

Mr. Read in his testimony in relation to the compensation he was to receive, details the following conversation as had with Mrs. Boyle: That a few days before suit was started, and when he was advising that suit be commenced, because he believed nothing could be obtained without suit, Mrs. Boyle said: "All right, Mr. Read. What will you charge me for this litigation?" To which he replied, "Mrs. Boyle, I can't tell you what I will charge; I don't know how much work there will be in this case. It is a pretty large claim. It is amounting with interest now to about thirty-two or thirty-three thousand dollars. I might be able to undertake this work for you for a third or one quarter, but I can't tell how much I shall charge." Mrs. Boyle then said, "Will you put that in writing, Mr. Read?" and Read then said, "No, I do not want to do that because I can't tell how much work I shall be compelled to put into this case." That no contract could be predicated upon this conversation is patent. After this it appears the question of fees remained in abeyance until in the latter part of the year 1898 or early part of the next year, when Read said to Mrs. Boyle in his office, "I have done a great deal more work in this case than either you or I anticipated," and she said, "I know you have Mr. Read, and you shall be well paid for it." This colloquy amounted to nothing more than a promise of ample remuneration for services, warranting the indulgence of an expectation on the part of Mr. Read that when success crowned his efforts, his client, realizing the magnitude of his services and entertaining

a proper appreciation of them, would requite him therefor in an ample and not a niggardly manner.

Mr. Read says a third conversation was had in the Spring of 1900, and it is set forth in his brief as follows: "She," meaning Mrs. Boyle, "came into my office one day, I think it was in the early part of 1900, or the Spring of 1900, and she said to me, 'Mr. Read, how am I ever going to get all this money back that I have been paying out on account of expenses?' I said, 'Why Mrs. Boyle you haven't got as much at stake as I have in this case. If you don't get your money back, I don't get any fees out of this case. That is a good deal. My fees will amount to a good deal more than the money you have paid out in expenses in this matter; but I will tell you what will be the best way to arrange that: When we have got through with this case and it is finally settled, we will deduct all of the expenses you have been put to in this litigation from the sum received, and divide the balance.'" His counsel then asked him this question: "Divide it how?" He answered "In half, I take half and she half, and she says, 'Very well, Mr. Read.'" He further testified in answer to a question from his counsel: "In 1901, in the early summer my recollection is, she came in again, and she said to me that her son Henry was troubling her, and that her daughter, Mrs. Smith, was angry because she was supporting her son, and that she wanted to get away; she would like to have this case disposed of in some way so that she could get away and get off where nobody would know where she was, and have a rest. I said to her, 'Why, Mrs. Boyle, I cannot settle this case; we will never be able to settle this case until we can force the defendants to a trial. But', I said, 'I don't want you to go to the defendants without I am present with you.' She says 'I won't, Mr. Read. I won't go to them unless you are with me, and if I make any settlement at all, you shall get your half of the money just the same.'"

The admeasurement of damages is based upon the terms of this agreement and the judgment is in virtue of it.   No evidence was proffered or received as to the value of the services rendered or as to the reasonableness or fairness of the compensation fixed by the agreement thus formulated.   Furthermore the court instructed the jury that there could be no recovery on the *quantum meruit* count of the declaration, thereby leaving the case with the jury for determination under the special count setting forth the contract deducible from the conversations above recited.   This contract does not violate the law against barratry and maintenance, and it is clear that it is not champertous.   It is nevertheless just as clear that the contract was made by the attorney with his client in relation to an interest to be acquired by him in the subject-matter of the litigation then going on.   It will be observed that this agreement for compensation was not made at the outset of the relationship of the parties, or before the commencement of the litigation, but after the same had been pending for several years and while it remained unsettled.

Such an agreement cannot be enforced.   While it may not be void, it is unquestionably voidable.   It is in law—not in morals—a fraud upon the client,—a constructive fraud—and the presumptions of the law in the first instance are against its validity.   This presumption, like every other presumption of law, may be rebutted by proof of the party invoking the contract of sufficient weight and force to overcome it.   This state of the law imposed upon appellee the burden of proving the fairness of the contract, the adequacy of its consideration, and that it was in all its essential and material parts equitable, and that no undue advantage growing out of the relationship of attorney and client had been practiced in its procurement— subjects upon which the proof is silent.

Appellee relies upon Morrison v. Smith, 130 Ill. 304, and Rolfe v. Rich, 149 *ibid.* 436, as sustaining his con-

tention that contracts of the nature of the one under which a recovery was had in this case is neither void nor voidable when made between attorney and client while that relationship exists. It must not be lost sight of that the contract in dispute gave to the attorney an interest in the subject-matter of the litigation then pending and not determined. Both cases *supra* contain the essential elements which are lacking in the case at bar, viz: proof that the transaction between the attorney and client was fair and honest, and upon an adequate consideration. In the Morrison case the decree of the trial court holding that the transaction did not bind the client was reversed because, as the court say, ''Our conclusion is that there is no ground for holding that the price paid by appellants was inadequate; and as they have shown that the transaction was fair and honest on their part, and that they were guilty of no want of fidelity to the interests of their client, we see no reason why the purchase should not be upheld.'' The court held as a legal proposition that the relation of attorney and client is one of special trust and confidence, that consequently the law demands that all dealings between them must be characterized by the utmost fairness and good faith. That all such transactions will be strictly scrutinized. That the strictness of the rule is such that such dealings are, as against the attorney, held to be *prima facie* fraudulent, casting the burden upon the attorney to maintain and prove the fairness, adequacy and equity of the transaction. In the Rolf case the court said ''that dealings between attorney and client, resulting in advantage to the former, will be closely scrutinized, and the attorney be required to show the utmost good faith and fairness, and that the client dealt with the full knowledge of his rights.''

Laying aside the question of whether or not such contracts are void or voidable, which we do not regard as necessary in our decision to decide, yet in no case cited, nor in any which our diligence in research has

brought to our notice, has the attorney, when seeking to enforce a contract to his own advantage, made with a client during the continuance of the professional relation, been absolved from the burden of proving in the first instance, as *sina qua non* to a recovery, that the contract was fair and honest, adequate and equitable, and that no advantage was obtained over the client in its procurement. These indispensible essentials of proof the law demands in every instance, and will not suffer them to be dispensed with or waived on any occasion where they arise.

In Elmore v. Johnson, 143 Ill. 513, the court said, in explanation of the doctrine of the case of Morrison v. Smith, *supra,* and in demonstrating that it was not in conflict with the decision then rendered: ''We have recently held in Morrison v. Smith, 130 Ill. 304, that a sale by a client to an attorney will be sustained if it is fair and honest and in no manner tainted with fraud, undue influence or corruption, and that the law does not go so far as to hold such a sale voidable at the election of the client. In that case the subject-matter of the purchase by the attorney from the client was a judgment obtained by the former for the latter. The judgment debtor was insolvent, except as to his ownership of an undivided interest in land which was subject to a life estate. The doctrine of that case is the law of this court as applied to such a purchase by an attorney from a client as is there described.   *   *   *   But there is a manifest distinction between a purchase by an attorney from a client and a contract made during the pendency of a litigation for the conveyance or transfer by the client to the attorney of a part of the property involved in the litigation as a compensation for his legal services therein.''

Read made his contract with Mrs. Boyle for an interest in the property in litigation as compensation for his legal services while the relationship of attorney and client existed and the matter in litigation remained undisposed of.   Such a contract, under the ruling in

Elmore v. Johnson, *supra,* is presumptively fraudulent, casting the burden upon the attorney to show affirmatively the utmost good faith, in the absence of undue influence, fair price, knowledge, intention and freedom of action by the client, and also that the attorney gave the client full information and disinterested advice. The opinion of the court goes one step farther and holds that such a contract is voidable at the election of the client, if exercised within a reasonable time, irrespective of the condition of fairness or unfairness entering into the procuring of the contract. This doctrine has never since been departed from in any subsequent decision to which we have been referred or which a search has brought to our attention. Ross v. Payson, 160 Ill., 349, and Willin v. Burdette, 172 Ill. 117, announce a like doctrine.

Lord Chancellor Westbury, in Tyrrell v. Bank of London, 10 H. L. Cases 26, held to the doctrine in cases of the nature disclosed by this record and here discussed, that there can be no more benefit flowing to the attorney from the client than fair and just compensation for services rendered, regardless of the source from which it is obtained. He pronounced the doctrine in these words: "There is no relation known to society, of the duties of which it is more incumbent upon a court of justice strictly to require a faithful and honorable observance, than the relation between solicitor and client; and I earnestly hope that this case will be one of the many which vindicate that rule of duty which has always been laid down, namely, that a solicitor shall not, in any way whatever, in respect to the subject of any transactions in the relations between him and his client, make gain to himself at the expense of his client, beyond the amount of his just and fair professional remuneration to which he is entitled." Cassen v. Heustis, 201 Ill. 208; Gruby v. Smith, 13 Ill. App. 43; Dyer v. Sutherland, 75 Ill. 583.

The rule here announced is the same in law as in equity. Pratt v. Kerns, 123 Ill. App. 86.

Appellee cannot recover on the contract embraced within the special count and supported by his testimony, unless he goes farther and not only proves the making of the contract, but that it was fair, equitable and upon an adequate consideration, and that appellant was disinterestedly advised as to her rights at the time she entered into it, and further that the service actually rendered at a fair and reasonable charge equals the amount payable under the contract. This being so, the third instruction given at appellee's request was erroneous in not containing the elements of the degree of proof imposed on appellee by the law before the jury were authorized in finding a verdict in his favor.

For the errors indicated the judgment of the Superior Court is reversed and the cause remanded.

*Reversed and remanded.*

Mr. Justice BROWN dissenting.

I do not agree with the majority of the court in this case, and I desire to record my dissent.

It seems to be conceded by the opinion of the court that the jury could properly decide as they did against the contention of the defendant that the contract for a contingent fee sued on was not made by the parties, and against the contention that the contract that was made was champertous, but the decision is put squarely on the ground that a contract for a stipulated compensation, contingent or otherwise, made while the relation of client and lawyer exists, is so far presumptively fraudulent in law (though not necessarily in morals) that it cannot be enforced by the lawyer without proof, the burden of which is cast on him, to overcome this presumption. He must bring evidence that the contract was "fair," "equitable," "upon adequate consideration," and that the client was "disinterestedly advised as to his rights at the time he entered into it."

I do not think the law goes to this extent. I do not think there is any such presumption of fraud to over-

come. in an action at law on such a contract. While dealings between a lawyer and his client are carefully scrutinized, I do not think there is any presumption of fraud, actual or constructive, in cases where no circumstances of suspicion are shown.

I think from the evidence in this case the jury were justified in believing that the contract made was without any fraud or the taking of any advantage of the appellant, and was fair and equitable, and consequently neither void, voidable nor unenforceable under the law of Illinois.

I do not think the verdict was against the weight of the evidence, nor against the instructions of the court; nor do I think the instructions were erroneous in any particular. Therefore, in my opinion, the judgment of the Superior Court should be affirmed.