**George W. Morrow, Plaintiff in Error, v. William A. Compton and James T. Gallagher. William A. Compton, Defendant in Error.**

1. ATTORNEY AND CLIENT, § 81*—*attorney as owing good faith and exercise of best ability to client.* In view of the confidential relation existing between an attorney and his client, the former owes to the latter absolute good faith and the exercise of his best ability in the litigation which he is employed to conduct.

2. ATTORNEY AND CLIENT, § 93*—*when purchase by attorney from client will be treated as constructively fraudulent.* Where an attorney purchases from his client the property which is in litigation, it is not necessary in order that the client may be relieved from the consequences of the transaction that he show actual fraud and imposition on him by the attorney, but the burden is on the

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

attorney to show perfect fairness, adequacy of consideration and equity in the transaction, and, if he fails to make such proof, a court of equity will treat the case as one of constructive fraud.

3. ATTORNEY AND CLIENT, § 93*—*when transaction by attorney with client's property will be held to have been made for client.* The conduct of an attorney in purchasing from his client the property in litigation will be closely scrutinized by the courts, and, if he has not acted with strict fairness, adequacy and equity, the transaction by him and in his name with his client's property will be held to have been made for his client.

4. ATTORNEY AND CLIENT, § 93*—*when land transactions between attorney and client are voidable by latter.* Transactions between an attorney and his client whereby the title to land involved in litigation passes to the attorney are voidable at the election of the client irrespective of the fairness or unfairness of the contract, provided such election is exercised within a reasonable time.

5. ATTORNEY AND CLIENT, § 93*—*what does not prevent client from obtaining relief where attorney has purchased land which was in litigation.* The fact that shares of stock which an attorney had induced his client to accept as payment for land, which land was in litigation and which the attorney had purchased from such client, were made out in the name of the client's wife, *held* not to in any way interfere with the right of the client to relief in a subsequent suit by him against the attorney for an accounting.

6. ATTORNEY AND CLIENT, § 93*—*when dismissal of bill by client against attorney will be error.* Dismissal for want of equity of a bill by a client against an attorney for an accounting, the basis of which bill was the purchase by the attorney from the client of land which was in litigation, *held* error.

Error to the Circuit Court of McDonough county; the Hon. ROBERT J. GRIER, Judge, presiding. Heard in this court at the April term, 1919. Reversed and remanded with directions. Opinion filed October 21, 1919. Modified and refiled December 29, 1919.

GEORGE V. HELFRICH, for plaintiff in error.

MILLER & WALKER, for defendant in error; J. G. FRIEDMEYER and C. F. MORTIMER, of counsel.

MR. PRESIDING JUSTICE GRAVES delivered the opinion of the court.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Plaintiff in error, George W. Morrow, filed his bill of complaint in the Circuit Court of McDonough county against defendants in error seeking to compel the defendant in error William A. Compton to account for the proceeds of the sale of an undivided one-eighth interest in 170.68 acres of land. Defendant in error James T. Gallagher was defaulted. The other defendant in error, William A. Compton, answered the bill, a replication to his answer was filed, the cause was referred to a special master in chancery to take proofs and report the same without findings either of law or fact. The master took the proof and reported the same to the court. Upon a hearing before the chancellor the bill was dismissed for want of equity.

The facts as gathered from the record are that plaintiff in error Morrow on September 20, 1910, inherited from his father a one-eighth interest in 170.68 acres of land in McDonough county subject to the dower interest of his mother, then 74 years of age. He was a farmer about 34 years of age whose schooling ended in the sixth grade. He was a man of limited experience in business outside of such transactions as were immediately connected with farming. He and his sister, Mary Brown, who also was the owner of an equal interest with him in the land, employed defendant in error William A. Compton, a lawyer residing in that county, of mature years, having had a wide business experience and being financially well to do, to institute a partition proceeding and thereby secure for them their shares of the real estate left by their father. On October 17, 1910, Compton, acting as solicitor for Morrow and his sister, filed a bill for partition to the January term, 1911, of the Circuit Court of McDonough county. On October 19, 1910, two days after filing the bill, Compton purchased the interest of his clients in the real estate. The agreed consideration for the interest of plaintiff in error was $2,000 and for the sister's interest was $1,500. In

payment for these interests he gave to plaintiff in error Morrow two notes, one for $1,500 and one for $500 and to Mary Brown he gave his note for $1,500. When the deeds were made the name of James T. Gallagher was inserted therein as grantee although he had no interest whatever in the transaction. After these conveyances were made to Gallagher, Compton filed a supplemental bill stating that Gallagher had become the owner by purchase of the interest of plaintiff in error and his sister Mrs. Brown in said premises and praying for a partition of the same. In April, 1911, about 6 months after the deed of the interests of Morrow and his sister in the lands had been executed, Compton sold for $8,534 and conveyed, the same interests that he had purchased from his clients for $3,500, and the bill for partition was then dismissed. After the conveyance by Morrow of his interest in the lands, Compton claims that he took up the two notes given to Morrow for his lands and delivered to the wife of Morrow his, Compton's, one note for $2,000 payable to her. Morrow denies that the two notes were so taken up and one note for $2,000 substituted in their place, but in the view we take of the case it is immaterial whether he did so or not. Sometime later, Compton induced Morrow to say he would accept 25 shares of stock in the Western Stoneware Company of the par value of $2,500 for his obligations so representing the consideration paid for the interest of Morrow in the land. Compton then purchased 25 shares of stock in the Stoneware Company for $425 and caused them to be transferred to the wife of Morrow on the books of that corporation and delivered the same to Morrow in exchange for his note or notes.

The evidence in the record establishes to our satisfaction that during all the time the transactions above recited were taking place a confidential relation, namely that of attorney and client, existed between the parties to this suit in which Compton was

the dominant factor; that whatever Morrow did in the matter, he did under the advice of Compton; that Compton purposely misstated facts to Morrow, misstated his rights and interests in the matter and misstated the value of his interest in the land; and the costs, difficulties and likely results of the litigation, all of which misstatements ·Morrow believed· to be true; that by such misstatements of facts he placed Morrow in fear of losing all he had and even of arrest for crime; that whatever was done by Morrow in this transaction from first to last was done at the instigation and on the advice of Compton for his own gain and profit, including whatever was done in regard to transferring the indebtedness of Compton to Morrow, to Morrow's wife, and in substituting therefor stock in the Stoneware Company; that the stock in the Stoneware Company was practically if not absolutely worthless and that Compton knew it but that Morrow was induced by Compton to believe that it was a good investment worth $80 per share and was thereby induced to surrender Compton's note or notes to him and to permit the stock in that company to be placed in the name of Mrs. Morrow. The proof further conclusively shows that by the means employed, Compton secured for himself at an outlay of $425 property belonging to Morrow worth, and for which Compton actually received, $4,267, but for which Morrow received nothing of value.

In view of the confidential relation existing between these parties Compton owed to Morrow absolute good faith and the exercise of his best ability to secure for Morrow all of his interests in the land in question. *Warner v. Flack,* 278 Ill. 303; *Mansfield v. Wallace,* 217 Ill. 610.

Where an attorney purchases property from his client which is the subject of litigation, it is not necessary in order that the client may be relieved from the consequences of the transaction to show actual fraud

and imposition practiced by the attorney on his client. The burden is on the attorney to show perfect fairness, adequacy of consideration and equity in the transaction, and, if he fails to make such proof, a court of equity will treat the case as one of constructive fraud. *Warner v. Flack,* 278 Ill. 308; *Willin v. Burdette,* 172 Ill. 117; *Elmore v. Johnson,* 143 Ill. 513. The conduct of an attorney in such transactions will be closely scrutinized by the courts, and, if he has not acted with strict fairness, adequacy and equity, the transactions by him and in his name with his client's property will be held to have been made for his client. *Hess v. Voss,* 52 Ill. 472; *Mansfield v. Wallace,* 217 Ill. 610-623.

Transactions between an attorney and his client whereby the title to land involved in litigation passes to the attorney are "voidable at the election of the client, irrespective of the fairness or unfairness of the contract, provided such election is exercised within a reasonable time." *Elmore v. Johnson,* 143 Ill. 513-528.

Not only has Compton failed to maintain the burden cast upon him by the law, of establishing perfect fairness, adequacy of consideration and equity in the transaction, but the proof positively establishes the opposite condition. It also further establishes that Morrow undertook to repudiate the transaction as soon as he became aware of the deceptions practiced upon him by Compton.

The fact that the shares of stock in the Western Stoneware Company that Morrow accepted from Compton, in lieu of all other promises and consideration for the sale of his interest in the land, were made out in the name of his wife, in no way interferes with the right of Morrow to the relief sought by him in the bill in this case for at least three reasons: *First,* the stock was placed in the name of Mrs. Morrow at the suggestion of Compton for the pretended purpose

of getting it beyond the reach of those who might seek to obtain it in the hands of Morrow himself, on some pretended claim or pretext that Compton knew did not exist. It is a legitimate inference in view of one of the defenses made here that the purpose Compton had in having these shares of stock placed in Mrs. Morrow's hands was to attempt to place them beyond the power of Morrow to return in case a suit like the present one should be instituted. Be that as it may, Compton cannot take advantage of the fact that he by false arts and practices induced Morrow to accept these shares so made out to his wife. *Second,* Morrow produced the stock in court and offered to surrender it to Compton. *Third,* the title to the land had passed from Compton into the hands of innocent purchasers and the bill does not seek for the return of the title to the land but for a delivery to Morrow of the proceeds of its sale by Compton, and the law undoubtedly is that the court had power to place Compton *in statu quo* by crediting him with the amount he paid for the shares of stock, if they could not be returned to him.

The court erred in dismissing the bill for want of equity and the decree is reversed and the cause is remanded with directions to enter a decree finding the equities in favor of Morrow, plaintiff in error, and against Compton, defendant in error, directing plaintiff in error to deposit with the clerk of the Circuit Court of McDonough county for defendant in error the stock in question, entering judgment against defendant in error Compton, in favor of plaintiff in error Morrow, for the sum of $4,267, together with interest to be computed at the rate of 5 per cent per annum from April 25, 1911, to the date when such decree shall be entered, and directing that execution shall issue therefor.

*Reversed and remanded with directions.*