## T. C. ROBINSON

*v.*

## BENTON SHARP *et al.*

*Opinion filed February 18, 1903.*

1. EQUITY—*when equity has jurisdiction to grant relief against contract on ground of fraud.* One desiring to avoid the legal effect of a contract upon the ground of fraud or misrepresentation as to the extent of the consideration received by one who occupied a fiduciary relation to him, may resort to equity to have the contract reformed or set aside, even though a suit at law has already been brought thereon.

2. SAME—*equity may investigate contract between attorney and client.* A court of equity may entertain a bill to investigate the alleged fraudulent conduct of an attorney in obtaining a contract from a client, and may set aside such contract if found to be unfair or obtained by undue advantage.

3. ATTORNEY AND CLIENT—*duty of an attorney in contracting with client.* An attorney for heirs in the settlement of an estate may agree to collect life insurance policies and may contract for compensation contingent upon his success, but he must give his clients disinterested advice and exercise the utmost good faith.

4. SAME—*when an agreement for compensation is properly set aside.* A contract giving an attorney one-half the proceeds of life insurance policies for collecting them is properly set aside, where it appears the relation of attorney and client already existed between the parties, and that the contract was procured by the unwarranted representation of the attorney that the policies might never be collected, whereas there was no evidence of any disposition to contest them, and they were, in fact, paid without delay, upon proof of loss.

*Robinson* v. *Sharp*, 103 Ill. App. 239, affirmed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Fulton county; the Hon. JOHN J. GLENN, Judge, presiding.

CHIPERFIELD & CHIPERFIELD, for appellant.

HARRY M. WAGGONER, and LUCIEN GRAY, for appellees.

Mr. JUSTICE BOGGS delivered the opinion of the court:

On the 25th day of December, 1900, one Carrie S. Crabel departed this life, leaving the appellees and one Lillie McPherson her heirs-at-law. The deceased held three policies of insurance on her life, aggregating the sum of $7000, payable to her estate. One J. B. Snedeker was appointed administrator of the estate of the deceased. On December 28, 1900, the appellees entered into a written contract with the appellant, who is an attorney, which, according to the pleadings, seems to have been an agreement to pay the appellant one-half of the amount collected on said policies in consideration of his services in collecting the amount due on the policies. The insurance company did not question its liability to pay the policies, but because of an erroneous statement as to the age of the assured, deducted, under the provisions of the policy applicable in such instances, the sum of $140, which should have been paid as premiums had the correct age of the assured been given. The sum of $6860 was paid by the insurance company in full of the policies, less the deduction, but the company insisted that the administrator of the estate of the assured was the proper party to receive the money, and paid that sum to the administrator. The appellant claimed to be entitled to receive one-half of the sum so collected and paid to the administrator, but the appellees insisted that the contract to allow and pay him that sum was obtained by fraudulent misrepresentations and deceit practiced by said appellant while he occupied the confidential relation of legal adviser to them, and in violation of the trust and confidence reposed in him in consequence of the fact that he occupied that relation, and they refused to recognize the agreement as binding upon them. The appellant thereupon instituted an action at law to recover a common law judgment against the appellees on the written agreement to pay him one-half of the amount recovered on the insurance policies for his professional

services in and about the collection of the policies. The appellees filed their bill in chancery for a decree declaring the agreement sued upon in the action at law to be null and void, and for an order requiring the appellant to deliver the agreement up to be canceled and for a decree restraining the further prosecution of the action at law. The appellant answered the bill, and in such answer denied that said Lillie McPherson had any interest, as heir or otherwise, in the estate of said deceased or in the policies on the life of the deceased; denied that the relation of attorney and client existed at the time the agreement was executed; denied that he made false representations or practiced any deceit; admitted that he had instituted an action at law on the agreement, and specially pleaded that the appellees, complainants in the bill, had an adequate remedy at law and could make all and every defense to which they were entitled under the allegations of their bill in the trial of the suit in the court of law, and that therefore jurisdiction was lacking in a court of equity to entertain the bill. Replication was filed to the answer and a hearing had in open court before the chancellor. The court found the equities were with the appellees, but ordered that the appellant should be permitted to introduce testimony to show the reasonable value of his services in the matter of the collection of the policies. The appellant declined to produce such testimony, and a decree was entered granting relief according to the prayer of the bill. The cause was heard by the Appellate Court for the Third District on appeal, and the decree was affirmed. This is a further appeal perfected by the appellant to this court.

The grounds urged in this court for reversal are, first, that appellees had a complete and adequate remedy at law; and second, that the findings and decree are against the weight of the evidence and the equities of the parties.

*First*—The alleged false representations which the appellees relied upon to defeat the written agreement which

they had executed did not relate to the nature of the instrument signed by them, but to the nature and value of the consideration.   Fraud touching the execution of an instrument, such as misreading, the fraudulent substitution of one paper for another, or obtaining by some trick or device an instrument which the party did not intend to execute, may be availed of in defense to an action on the instrument in a court at law.   But if the party who has executed a written instrument, understanding at the time what he was signing, desires to avoid the legal effect of the writing on the ground he was induced to sign it by misrepresentations, false statements and deceit as to the nature, extent and value of the consideration, made by one who occupied a fiduciary relation to him, he must resort to a court of equity for a decree reforming or setting aside the instrument.   This is the rule in all jurisdictions where the distinction between law and equity is retained. (*Papke* v. *Hammond Co.* 192 Ill. 631.)   An exception to the rule exists, by express statutory provisions, when it is desired to question the consideration of a negotiable instrument for the payment of money or property.   (Starr & Cur. Stat. 1896, chap. 98, par. 13.)   It is unnecessary to here inquire whether the exception did not also exist at the common law in cases of negotiable instruments, for the reason the instrument here under consideration is not a negotiable instrument.   Courts of equity have long entertained bills brought to investigate alleged fraudulent conduct in transactions between client and counsel, and to declare such transactions void on the ground of constructive fraud if found to be unfair or obtained by undue advantage.   (*Jennings* v. *McConnel,* 17 Ill. 148; *Morrison* v. *Smith,* 130 id. 304; *Willin* v. *Burdette,* 172 id. 117; *Broyles* v. *Arnold,* 11 Heisk. 484; 1 Story's Eq. Jur.—12th ed.—310; 3 Am. & Eng. Ency. of Law,—2d ed. —433, and note.)   The chancellor did not err in retaining jurisdiction of the bill.

*Second*—We think the decree must be regarded as supported by the evidence. We need not pause to consider whether a contract made before the relation of attorney and client exists, for the purposes of procuring the professional services of counsel, is subject to that particular scrutiny of the court which is given to contracts made between attorney and client after the confidential relation has been created and is subsisting, for the reason it appeared from the proof that at the time when the instrument here decreed to be canceled was executed the appellant stood in the position of legal adviser and counselor to the appellees. The appellees were heirs-at-law of Mrs. Crabel, deceased. It was apprehended by them that the question whether the assured, Mrs. Crabel, left a valid will or died intestate would result in litigation, and the testimony of the appellees was to the effect the appellant had been employed by them to render professional services in aid of the appellees to protect their interests in this threatened litigation and to act as their attorney in matters connected with the administration and settlement of her estate, and that the collection of these policies came up for consideration while such relation existed, and the contract in question was obtained under the influence of the confidence reposed in the appellant. There was some conflict in the testimony on the point whether the appellant had been retained as counsel for the appellees in respect of the general affairs of the estate when the agreement in question was executed. The chancellor saw the witnesses and heard them testify, and after consulting the evidence preserved in the record we are unable to discover any reason why we should refuse to accept the conclusions reached by the chancellor under circumstances so much more favorable to a correct understanding of the truth of the matter than the record of the proceeding affords to us. The company paid all the policies, without delay, upon presentation of final proofs of death, etc. The evidence warranted

the chancellor in believing that the appellant advised the appellees that it was doubtful whether any sum could ever be recovered on the policies; that other policies issued by the same company had been recently submitted to him and he had found them to be defective; that he might be able to collect the policies in which appellees were interested without much trouble, or he might be required to expend $1500 or $2000 in the prosecution of the claims under the policies and then be unable to recover anything, and that by thus arousing the fears of the appellees he induced them to agree to pay one-half of whatever sum the appellant might collect upon the policies. Each of the policies contained a clause, printed in bold-faced type, to the effect that it "was incontestible after the date of issue," and on two of them appeared, in print, on the outside of the policy as folded, the following notice:

"*Notice.*—It is not necessary for the insured or beneficiary to employ the agency of any person, firm or corporation in collecting the insurance under this policy or in receiving any of its benefits."

The insurance company did not question liability to pay the policies, but paid them without delay upon presentation of formal proofs of death, etc., and there is nothing in the evidence which tends to prove the company ever contemplated denying liability or that there was any reason to apprehend there would be any necessity for litigation of any kind in the matter. Nor is there any evidence in the record tending to show that the appellant believed or expected that liability to pay would be denied or that resort to litigation would be necessary. Under such state of circumstances an agreement requiring his clients to pay one-half of the face of the policies can but be denounced as unfair, and obtained by undue exercise of the influence which the appellant enjoyed as the legal counselor and adviser of the appellees. The appellant was clothed with the character of attorney and

counselor for the appellees in matters concerning the
settlement of the estate of their deceased relative. The
assets of the estate consisted, in part, of these policies
on the life of the deceased. He had the perfect right to
engage in his professional capacity to collect the poli-
cies, and even to contract for compensation based upon
the contingency of success. (4 Cyc. 989.) But it was the
duty of the appellant, in respect of the matter of con-
tracting for compensation for collecting the policies, to
give his clients full information,—disinterested advice;
to exercise the most perfect good faith, and not seek to
avail himself of the influence and confidence arising out
of and attendant on his position as attorney to obtain an
unconscionable advantage to himself.

That the appellees, in entering into the agreement to
pay one-half of the insurance money to the appellant,
were actuated by serious apprehensions as to the possi-
bility or probability of collecting anything thereon must
be admitted. The chancellor believed, from the proof,
that such apprehensions were aroused by the appellant.
That there was no ground for such fear is beyond ques-
tion, and there is nothing in the evidence to show the
appellant had any reason to believe, or did believe, that
any litigation or contention would arise to prevent, or
even delay, the collection of the policies. The amount
contracted to be paid was clearly oppressive and unjust,
and the chancellor correctly ruled that appellees should
be relieved from the obligation of the contract and that
the appellant was entitled to reasonable compensation
for the service performed. (3 Am. & Eng. Ency. of Law,
—2d ed.—p. 433.) We think the finding of the chancellor
was supported by the evidence and that the decree was
properly pronounced.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*