## Peter E. Pratt v. Frank A. Kerns et al.

### Gen. No. 4,532.

1. ATTORNEY'S FEES—*when sum agreed upon cannot be recovered*. An attorney cannot recover the amount agreed to be paid him for the conduct of a cause where the client settles the same before the attorney has fully performed; in such a case the attorney is only entitled to the reasonable value of the services actually rendered. .

Pratt v. Kerns.

2. ATTORNEY AND CLIENT—*when contract for fees will not be enforced*. A contract for attorney's fees will not be enforced where it appears that the attorney did not advise his client in good faith and thereby obtained an agreement for compensation which was excessive.

Action of assumpsit. Appeal from the Circuit Court of Stark County; the Hon. THEODORE N. GREEN, Judge, presiding. Heard in this court at the April term, 1905. Reversed and remanded. Opinion filed August 1, 1905. Rehearing denied October 17, 1905.

B. F. THOMPSON, for appellant.

J. H. RENNICK and O. G. FULLER, for appellees.

MR. PRESIDING JUSTICE VICKERS delivered the opinion of the court.

This is an appeal from a judgment of the Circuit Court of Stark County in favor of Kerns & Fling and against Peter E. Pratt for $500 for attorney's fees. Peter Pratt, Sr., the grandfather of appellant, devised eighty-six acres of land in Stark County to his son, Isaiah Pratt, for his natural life with the remainder to his children if any survived him. In 1896 the life tenant failed to pay the taxes and the land was sold to Harry A. Hammond for the unpaid taxes of 1895. Isaiah Pratt made an effort to redeem, but was apparently unable to do so. Finally he made a contract with A. G. Hammond, the father of Harry A. Hammond, by which A. G. Hammond was to take a deed for the land and pay his son the amount of taxes, penalties and costs, and when Isaiah or Peter Pratt, Jr., repaid him the amount it cost to redeem the land and for the necessary improvement and taxes thereafter paid, Hammond was to reconvey the land to either Isaiah or Peter Pratt, Jr., according to the provisions of the will. The rents were used to pay Isaiah's board. Appellant attained his majority in September, 1903. The land had not been redeemed up to this time. The evidence shows that appellees called appellant's attention to the matter of the title to this land and invited him to their office to talk the matter over.

On June 25, 1904, Mr. Colgan, an insurance agent, called

appellant up to his office and told him he was in danger of losing his land and suggested that they go to the office of appellees. They went to the office and the contract sued on in this case was made.

The contract, after reciting that appellant's lands had been sold for taxes, and the desire of Peter Pratt to redeem the same and recover the title to himself, provided that appellees should be employed and authorized, as the attorneys of the said Peter Pratt, to take the necessary legal steps to recover said land for the said Peter Pratt, for which appellant was to pay appellees $500 for such legal services as soon as said lands were redeemed from said tax sales; appellant agreed to pay all costs connected with the redemption. In case said lands were not recovered no fee was to be paid. The evidence shows that about the time the contract was executed Kerns called on A. G. Hammond and told him they were thinking of trying to get Peter Pratt's land back for him, and inquired of Hammond concerning the status of the title. Hammond then made a full statement of the situation to Kerns, telling him that after this land was sold for taxes Hammond, at the request of Isaiah Pratt, had redeemed the land and had taken the title to hold as collateral security for the payment of the redemption money and for improvements. Hammond told Kerns he had agreed in writing to reconvey as soon as he received his money, and that he was ready and willing to do so. He also informed Kerns that he thought it would require about $350 or $400 to re-imburse him. The date of this conversation is not shown. Mr. Hammond had been the executor of the will of Peter Pratt, Sr., and at the time of this interview gave Mr. Kerns a copy of the will, which he took away with him. Mr. Hammond, a day or two later, drove out to see appellant, and told him he was under a contract to reconvey, and all he wanted was his money. Mr. Foster, an uncle of appellant, assisted him in raising the money to pay off the claim of Mr. Hammond, which was done, and Hammond made a deed in accordance with his agreement, thus clearing up the title. Appellees con-

tend that they did quite an amount of investigating, and prepared the "necessary papers" to recover the land before they were notified that the matter was all settled and that there was nothing further for them to do. Under this statement of facts a judgment for $500 for legal services has been rendered against appellant, from which this appeal is prosecuted.

For the purpose of a decision of the questions involved in this appeal the pleading must be considered as though only a plea of the general issue was filed. Other pleas were filed, but they are either defective in form or not supported by the evidence.

The case was tried below on the theory that if appellees were ready, willing and able to go on and perform the contract, and were prevented from so doing by appellant's making a settlement with Hammond, then appellees were entitled to recover the full amount contracted to be paid. Appellees have made an extended argument to sustain this contention, but as applied to contracts between attorney and client the rule seems to be that where a contract is made for a contingent fee and the client settles the case out of the court the attorney is entitled to recover only what the services actually rendered were reasonably worth. 3 Am. &. Eng. Ency. of Law, page 427 (2nd ed.); Western Union Tel. Co. v. Semmes, 73 Md. 9; Polsley v. Anderson, 7 West Va. 202; Ellwood v. Wilson, 21 Iowa 523.

In the Iowa case above cited, Dillon, J., said: "The contract was not intended to prevent the client from settling his cause. The law encourages the amicable adjustment of disputes, and a construction of a contract that would operate to prevent the client from settling will not be favored."

In Moore v. Robinson, 92 Ill. 491, an attorney contracted to defend and procure the discharge at the June term of a prisoner charged with passing counterfeit money, for $1,000, $600 of which was paid in cash and the balance by a promissory note, and agreed in case he failed to procure such acquittal and discharge at the said June term to return the $600 cash and the note for $400. The prisoner fled the country

and did not appear at the said June term. In a suit against the attorney for the money and note it was held that the attorney was entitled to retain compensation out of the $600 for the services actually and in good faith performed before ascertaining that the performance had become impossible, and that a judgment for the balance should go against the attorney. Under the principle laid down in the foregoing authorities an attorney may recover the value of the services actually rendered before performance was prevented or became impossible, and if the proof warranted it, the whole amount might be recovered, but only by proof that the services rendered were reasonably worth the contract price. The evidence as to the extent and value of the services rendered in the case at bar shows that all that was done was to examine the statutes as to the right of redemption, prepare some papers and interview Mr. Hammond. One of the appellees testified that he thinks he spent as much as five days investigating and reading the session laws concerning the right to redeem lands sold for taxes. The other member of the firm admits that he did nothing after the contract was made. While no one testifies as to the value of these services we feel entirely safe in saying that they bear no just proportion to the amount of recovery.

There is still another reason which, to our minds, is fatal to the right of recovery on this contract. After reading all that appellees have to say in support of this contract we are forced to the conclusion that this contract is unfair and that appellees have not acted with that degree of good faith and candor that should always be applied by attorneys in their dealings with clients. If these attorneys knew the conditions upon which Hammond held this title and failed to advise appellant of the same, but suppressed the fact or practiced any unfairness in securing the contract, the contract will be held invalid, and appellees will be remitted to their right of recovery on a *quantum meruit* for any services actually rendered. Chester County v. Barber, 97 Pa. St. 455; Stewart v. Houston & Texas R. R. Co., 62 Texas 248; Dorr v. Camden, 65 L. R. A. 348.

Pratt v. Kerns.

In view of the plain statutory right of appellant to redeem from this tax sale at any time within one year after he attained his majority, it is difficult for us to see how, in any possible contingency, appellees expected to render services that would be worth $500. The payment of the money to the proper officer within the time was all that was necessary to be done to redeem the land. Unless the tax title was defective in some particular a redemption in said manner was the only way by which it could be removed. · Appellees do not pretend to have made any investigation to ascertain whether the proper statutory requirements had been observed in the proceedings resulting in the sale of the land. It is a matter of common knowledge among lawyers that very few so called tax titles are valid. Yet it seems never to have occurred to appellees to look into this one. What they expected to do to earn $500 or any considerable portion of it is beyond our ability to surmise. Appellant was a mere boy, only a few months past his majority, and probably unacquainted with the legal status of his title. Appellees were lawyers and knew his right and also the sure and comparatively easy means of removing the tax title, still they told him, as appellant testifies, it would require a long and difficult proceeding to regain his land, and cautioned him to stay away from " old Hammond" for fear he would find out what they were going to do and "skip out." Language of this kind spoken by a lawyer to a young and inexperienced client is well calculated to excite his apprehension and impress him with the gravity of the situation, to escape from which he would willingly make any contract or accede to any terms proposed by those to whom he was looking for deliverance. The influence of appellees over this young man is shown by the contract itself. The unreal character of the dangers to be apprehended from Mr. Hammond appears from his subsequent conduct. When Hammond found a disposition to redeem the land manifested, he felt it his duty to go and tell the boy all about it, which he did, and made the deed as soon as he was paid the money he had expended. This is a contract that we cannot sanction. The rule, invoked

by appellees, that it is only fraud that is practiced in the execution of the instrument which is available as a defense in an action at law, is too restricted in its application to meet the exigencies of a case like this where the relation is that of attorney and client.

In this connection the language of Lord Chancellor Loughborough in Newman v. Payne, 2 Ves. Jr. 199, seems applicable. It is there said: "The plaintiffs in this bill submit to pay what is really due; and the bill does not specifically pray to set aside on account of fraud, circumvention, or improper advantage taken in any of the securities, but considers them all as securities available to some extent; but it impeaches these several transactions, as such as ought not to be countenanced in a court of justice. I have no doubt of the relief to be given. The grounds of it would equally apply to any other court of justice. I do not go upon any particular ground of equity, that governs the proceedings of a court of equity; but I found it upon grounds that would equally entitle the plaintiff to the same order from any court of law; as I take up the facts upon that protection, that every court owes to the suitors of the country in affirmance, not only to the general policy of the law, but of several particular relations, that there shall be peculiar restraints upon attorneys, and that they are not to deal with their clients upon exactly the same terms upon which men at large may deal with each other. They are considered as officers of the court; and have several privileges as such; there are peculiar summary proceedings both for and against them; and I can easily conceive how this very identical case might have come into a court of law: and if so, that court would have done exactly what I shall do."

This doctrine is recognized and applied in Gruby v. Smith, 13 App. 43, which was an action at law. See also Story's Eq. Jur., sec. 310; Jennings v. McConnell, 17 Ill. 148.

For the reasons above given the judgment is reversed and the cause remanded.

*Reversed and remanded.*