## Frank Comerford, Appellee, v. Max O. Loewenbein, Appellant.

### Gen. No. 27,223.

ATTORNEYS AND COUNSELLORS—*fairness of contract for compensation of attorney.* A contract between an attorney and his client fixing the attorney's compensation for services to be rendered at a specified sum is not subject to the rule that transactions between attorney and client are scrutinized with peculiar care because of the relation existing between them, where the evidence shows that the attorney was employed to secure the release of his client's brother as a prisoner of war in Russia, that the extent, character and duration of the services to be rendered could not be definitely determined when the employment was entered into, that the amount was fixed when the attorney was first employed after several conferences between attorney and client and was not unreasonable nor the contract unfair and unconscionable, and in such case the burden is not upon the attorney to prove that the contract was fair and equitable and the consideration therefor adequate and that no advantage was taken of the client because of the relationship of attorney and client.

Appeal by defendant from the Municipal Court of Chicago; the Hon. JOHN A. BUGEE, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1921. Affirmed. Opinion filed January 10, 1923.

CHAPMAN, CUTLER & PARKER, for appellant; STANLEY RICH, of counsel.

ROBERT E. TURNEY, for appellee.

MR. PRESIDING JUSTICE THOMSON delivered the opinion of the court.

The plaintiff is a lawyer practicing his profession in the City of Chicago. He brought this action against the defendant to recover the sum of $1,500 which he claimed the defendant owed him as a balance due under an agreement, in which the defendant had agreed to pay $3,500 for the plaintiff's services in getting into communication with the defendant's brother, who was then a prisoner of war, interned in Siberia, and in arranging the latter's release. By this action the plaintiff also sought to recover $250, under the same agreement, which covered certain expenses the plaintiff had had in connection with the matter referred to, it being the plaintiff's contention that this was included in the agreement made by the defendant. The defendant admitted that he had employed the plaintiff for the purpose above referred to, but he denied that any agreement had been made covering the amount of the fee to be charged. In his affidavit of merits the defendant alleged that he had deposited $2,000 with the plaintiff, to be used in paying the plaintiff's expenses incurred in and about his efforts to accomplish the release of the defendant's brother and also in purchasing drafts to be forwarded to the latter, and he further alleged that after the plaintiff had performed certain services, he discharged him, and requested him to return the $2,000 he had deposited, less the expenses he had incurred and a reasonable fee for the services which he had then rendered. The defendant also filed a plea of set-off which is not involved on this appeal. The issues were submitted to and the evidence heard by a jury and by their verdict the jury found the issues for the plaintiff

and assessed his damages at the full amount claimed, $1,750. Judgment followed for that amount, to reverse which the defendant has perfected this appeal.

The plaintiff testified that the defendant first consulted him shortly after the middle of May, 1919, concerning his brother, who had been an officer in the Austrian army, and was then interned in Siberia, as a prisoner of war, some 3,000 miles from Vladivostock; that the defendant had for some time previous been trying to get into communication with his brother, and bring about his relief and release, but had been unable to accomplish anything; that he told the plaintiff he wanted to get money to his brother and he was anxious to bring about his liberation, and give him the opportunity to get out of Siberia, and come through the Orient to this country.

The plaintiff went over, in some detail, the various things the defendant had attempted in connection with this matter up to that time. It appears that the defendant again visited the plaintiff's office late in the month of May, and in the meantime, the plaintiff testified, he had seen the Consul General of the then Russian Government, and the plaintiff at this conference outlined to the defendant the plan he had concluded to follow, involving a trip east to New York and Washington, to confer with various agencies in the former city, and different government departments and bureaus in the latter city. The next conference between the plaintiff and the defendant was early in June and, the plaintiff testified, the defendant then approved the plan he had outlined, and told him to leave no stone unturned to get money to his brother, and that he also requested the plaintiff to guarantee the government in some way that his brother was a fit person to be admitted to this country.

The plaintiff testified that at this last conference the defendant asked him what this was going to cost and that the plaintiff replied that he could either make a

per diem charge for the actual time spent, plus expenses, or he could fix his fee at a lump sum; that the defendant remarked that the plaintiff doubtless could not tell how long it would take him to accomplish the desired result and that for that reason he would rather have the plaintiff fix his fee at a lump sum, whereupon, the plaintiff testified, he told the defendant that he would be willing to undertake the matter for him for a fee of $3,500, without regard to the success or failure of the venture, and that he would expect the defendant to pay his expenses; that there was some conversation between them as to what expenses would be involved and the extent of them, and that at the close of this conversation the defendant told him that the proposition he had submitted was entirely satisfactory to him. The plaintiff further testified that at this conference the defendant asked him how much he thought ought to be forwarded to his brother, provided they got a line of communication open, and the plaintiff suggested that it ought to be $1,500 or $2,000; that the defendant asked the plaintiff how much it would probably cost him altogether and he told him he had no means of telling him that; that the more money he sent his brother, the more chance he had of getting him out of Siberia; that the defendant remarked that if he sent $1,500 or $2,000 to his brother that would make $6,000 altogether and the plaintiff said that if they could not accomplish it for that, they could not accomplish it at all; that the defendant said that was very satisfactory and asked the plaintiff when he wanted the money; that the plaintiff said he did not need it at all then, but he asked the defendant to send him a retainer of $2,000 and that later on he could send the plaintiff $4,000, a portion of which he would send to the defendant's brother as soon as a line of communication could be established, and any balance would be kept, subject to the defendant's order, to which the defendant agreed. On the day fol-

lowing this last conference, the plaintiff received a letter from the defendant inclosing a check for $2,000, in which the defendant, among other things, said: "Inclosed please find check for $2,000 as per our conversation of this afternoon. As I stated, I am ready to follow this up with $4,000 more as soon as required or advisable."

In his testimony the plaintiff detailed his trip to New York and Washington following this conference with the defendant, and stated what he accomplished there. Upon the plaintiff's return to Chicago, he sent for the defendant and repeated to him what he had done and showed him a license he had secured from the government, authorizing the plaintiff to "engage in trade" with the defendant's brother, in behalf of the defendant, and send such brother the sum of $500, provided it would not be used for the benefit of any enemy or any ally of such enemy. The plaintiff further testified that upon the occasion of this conference the defendant appeared to be very greatly satisfied with what had been accomplished up to that time; that he mentioned the fact that he had been dealing in securities or stocks very heavily and stated that he wanted to collect on some and sell out others, and that he would bring the balance of the money to the plaintiff's office or send him a check. About three days later the defendant again visited the plaintiff's office and told him that he did not want him to go on any further in the matter, and on the same day he notified the plaintiff to the same effect in writing, requesting him to render an itemized statement of funds expended and due him for legal services, referring to the $2,000 "I have deposited with you on account" and authorizing the plaintiff to deduct the expenses incurred up to that time, from that sum. In this letter the defendant requested the plaintiff to send him a check for the balance.

A clerk employed in the plaintiff's office testified in

corroboration of the plaintiff as to the various conferences which took place in that office between the plaintiff and the defendant.

On the question of the fee to be charged, the defendant testified that the question of pay for the plaintiff's services was discussed for the first time at their second or third conference; that the defendant brought up this question, but the plaintiff appeared not to want to discuss it; that the plaintiff said he could not figure out how much it would cost because he did not know what steps would have to be taken, and that he finally said he was not in the matter for the money at all; that he had many other matters pending of great importance, which would bring him many times more than he could expect the defendant to pay, who was foreman with a manufacturing concern, and that he was interested merely because the life of a man was involved and because the adventure of the proposition attracted him, and that he mentioned that he would like to go to Siberia himself. The defendant further testified that the sum of $3;500 was never mentioned, except once, which was after the defendant had discharged the plaintiff; that the plaintiff "absolutely couldn't tell me any amount and in order to get some basis he asked me what I had, * * * and after I stated * * * he didn't state even then a definite amount. * * * He never said anything with reference to how much he expected to be paid for his services." On cross-examination the attention of the defendant was apparently called to the letter he had written, sending the plaintiff $2,000 "as per our conversation of this afternoon," and assuring the plaintiff he was "ready to follow this up with $4,000 more as soon as required or advisable," and he then testified that "the last time the lump sum that was to be paid was mentioned was the day before I sent my $2,000 check. * * * When I left him that day it was left that I was to put up a lump sum of

$6,000 or $7,000 but nothing definite as to the amount I was to send,'' and he then went on to explain that the reason he sent $2,000 was that this happened to be the amount he had in the bank.

The only error urged by the defendant in support of this appeal has to do with the instructions which the trial court gave to the jury. The defendant requested the court to instruct the jury that the burden was on the plaintiff to prove "that the defendant agreed to pay him the sum of $3,500 for his services, and that the contract was fair, and that the consideration therefor was adequate and that the contract was in all its essentials equitable and that no undue advantage growing out of the relationship of attorney and client was exercised over the defendant.'' The court did instruct the jury that the burden was on the plaintiff to prove that the contract, as claimed by him, was entered into by the defendant, but refused to give the instruction above quoted. We are of the opinion the court was correct.

In support of his contention the defendant relies upon the well-settled rule that the law watches with particular care all transactions had between an attorney and his client during the period of the existence of their relationship. The reason of the rule is that the parties cannot be considered as dealing on a basis of equality. Presumably, the attorney is learned in the law and appreciates all that may result from a given transaction with his client, while, on the other hand, the client is ignorant of the law and does not appreciate the full consequences of the transaction.

But, we know of no decision in which this rule has been applied to a contract entered into by the client with the lawyer for a lump sum fee, made as in the case at bar at or about the time when the lawyer was first consulted, and involving services, the extent of which necessarily was uncertain as to the elements of

time and the amount of labor that might be required to accomplish the end sought.

The general rule above referred to has usually been applied in connection with proceedings in equity brought by a client, involving some transaction between him and his attorney, having to do with the client's property or property rights or some interest in the subject-matter of the litigation in connection with which the attorney was retained.

The case of *Elmore v. Johnson*, 143 Ill. 513, is that sort of a case. There, the attorney, some time after his services for the client had been begun, by fraudulent representations and false promises induced his client to convey to him, by deed, certain of her property. In that case the court refers to the general rule and states that an attorney may contract, with reference to his services, before he undertakes the business of the client, because no confidential relation then exists and the same is true with regard to dealings that take place after the relation of attorney and client has been dissolved, but that the law watches with unusual jealousy over all transactions between the parties which occurred while the relation exists.

In the case of *Robinson v. Sharp*, 201 Ill. 86, the attorney entered into a contract with the heirs of a deceased woman who had left some insurance policies, payable to her estate, under which the clients agreed to pay the attorney one-half of the amount of the policies, upon their collection. It was shown that the insurance companies involved did not contest the policies and they were at all times expecting to pay them in due course. The attorney procured the contract referred to by fraudulently representing to the clients that the policies might never be collected and that there was some serious question as to the liability of the companies. The attorney later brought suit against the clients on this contract, whereupon, they filed a bill in equity, seeking to restrain the fur-

ther prosecution of the action at law, and the court, following the general rule, entered a decree granting the relief prayed for.

In the case of *Boyle v. Read,* 138 Ill. App. 153, the decision of the court was to the effect that a contract made by an attorney with his client was presumptively fraudulent, and that the burden was upon the attorney to prove the fairness of the contract, the adequacy of its consideration, and that it was in all its essential and material parts equitable, and that no undue advantage growing out of the relationship of attorney and client had been practiced in its procurement. This action was a suit at law by the attorney against the client. In connection with its decision, the court particularly called attention to the fact that the contract was made by the attorney with his client in relation to an interest to be acquired by him in the subject-matter of the litigation then going on, and further, that the agreement for compensation there involved was not made at the outset of the relationship of the parties, nor before the commencement of the litigation, but after the litigation had been pending for several years and while it remained unsettled.

In the case of *Pratt v. Kerns,* 123 Ill. App. 86, it was clearly shown that the attorneys were guilty of fraud in entering into the contract which was there involved, and it was there held that the contract would not be enforced for that reason.

The case of *Union Surety & Guaranty Co. v. Tenney,* 200 Ill. 349, involved a contract under the terms of which a client agreed to pay an attorney a certain retainer fee. It was there insisted that inasmuch as the relation of attorney and client existed between the parties at the time the contract in question was entered into, the burden of proof was upon the attorney to show not only the contract and its performance, but that the same was in all respects reasonable and fair, and it was urged that there should be no recov-

ery by the attorney inasmuch as the latter had offered no evidence as to the reasonableness and fairness of the agreement. The court held that the rule governing the relationship of attorney and client was not applicable to that situation. It was shown in that case that before the agreement was entered into, it had been examined and approved by the client's legal adviser at its home office.

The case of *Ward v. Yancey,* 78 Ill. App. 368, was an action brought against a client on a note given to his attorney in payment of attorney's fees. It was contended by the client that inasmuch as the instrument sued on was executed in consideration of legal services, the relations of the maker and the payee were such as to require affirmative proof on the part of the plaintiff, to the effect that the contract was fair and free from fraud. This contention was based on the general rule to which we have already referred. In deciding against the client's contention the court said:

"When we come to consider the reason of the rule and the character of cases in which it has been announced, we do not think it applicable to the case at bar. So far as we are advised, the rule has only been applied to cases of bargain and sale of property, and usually in courts of equity. * * * The relation of attorney and client has always been regarded as one of special trust and confidence. The law, therefore, very properly requires that all dealings between them shall be characterized by the utmost good faith. By reason of his superior knowledge of the law, the attorney has his client at a disadvantage. He is better informed as to the rights and interests of his client in the subject-matter of the transaction and the nature and effect of a sale or gift of it, and that is the reason of the rule of law which requires him, in a legal controversy with his client, to show affirmatively that fairness and equity characterized his conduct. * * * In the case at bar the dealings were not over any property rights of appellant. An application of the rule to the extent contended for by counsel would require ev-

cry attorney suing upon a promissory note executed by a client for legal services to show affirmatively that the services were performed, that the charges were reasonable, and that the client so understood it when he gave the note. In a case where the transaction was simply the giving of a note in payment of legal services performed, we do not think any greater duty rests with the attorney seeking collection by suit than devolves upon any other plaintiff suing upon a promissory note.''

That case has been cited with approval by this court in *Harney v. Lee,* 175 Ill. App. 250, and again in *Henry v. LeMoyne,* 219 Ill. App. 313.

Of course in any action by an attorney against his client to collect a sum which the client has agreed to pay the attorney for services, the client may defend on the ground of the unreasonableness of the charge, and, in our opinion, in such a situation, the client should be permitted to show that he was overreached or that he was led to agree to pay the amount by reason of the fraud or false representations of the attorney.

In the case of *Hopkinson v. Jones,* 28 Ill. App. 409, the court held that the burden was on the attorney to show the reasonableness of the charges made the client. But, in that case, the attorney did not sue on a contract for his fees, either express or implied, but on an account stated, and the court gave as a reason for the application of the rule in that case the fact that the plaintiff had ''declined to open up his dealings with his client by a proper declaration for that purpose, but chose to risk his case on an account stated.'' In the case at bar the plaintiff brought his action to recover the fee which he claims the client agreed to, in assumpsit, and it was open to the client to defend, if he chose, upon the ground that he had been overreached or that he had been led to agree to the fee claimed, by some fraud or false representation made by the attorney. He did not raise that issue, his con-

tention being that the agreement claimed by the attorney to have been entered into was in fact not made. In such a case, it is our opinion that the rule invoked by defendant cannot properly be applied. The fact that the client entered into the agreement with the attorney, with regard to the fee to be charged, after one or two conferences had occurred between them does not affect or change the situation.

From a reading of the testimony to be found in the record it would seem that the jury were entirely justified in reaching the conclusion that the agreement was entered into as claimed by the plaintiff and, furthermore, that there was nothing about it in any way unreasonable or unfair or unconscionable.

We find no error in the record and, therefore, the judgment of the municipal court is affirmed.

*Affirmed.*

TAYLOR and O'CONNOR, JJ., concur.