Henrik Goranson, Appellant, v. Carl Solomonson, Appellee.

Gen. No. 9,494.

Heard in this court at the October term, 1939. Opinion filed February 9, 1940. Rehearing denied March 19, 1940.

ANDREWS & ESSINGTON and CHARLES S. THOMAS, all of Rockford, for appellant.

CARL SOLOMONSON, *pro se.*

MR. JUSTICE WOLFE delivered the opinion of the court.

An action in chancery was brought by plaintiff appellant, Henrik Goranson, against the defendant appellee, Carl Solomonson, to cancel and annul a contract of employment entered into between them, because the fee required to be paid by the contract for services rendered by said defendant appellee, as an attorney, was so grossly excessive as to amount to a fraud against the plaintiff and was unconscionable. The greater part of this fee was the transfer to said attorney of a large part of capital stock which was the subject matter of litigation in another suit.

The plaintiff filed his complaint and alleged that on the 3rd day of November, 1938, a suit was filed against him by the Rockford Screw Products Co., to enjoin and restrain him from selling, assigning, transferring or disposing of 1,000 shares of capital stock of the said company, and to compel him to first offer said capital stock to the said company in accordance with a certain agreement between the said plaintiff and the Rockford Screw Products Company. The plaintiff further alleged that, on the 10th day of November, 1938, he conferred with Carl Solomonson, a duly licensed and practicing attorney in Rockford, Illinois, about said suit, and at numerous times thereafter; that he was advised by the said defendant regarding his legal rights in connection with said suit; that he employed the said defendant to represent him in said suit, prior to November 28, 1938; that on November 28, 1938, while the plaintiff was in an intoxicated condition, the defendant secured the signature of the plaintiff to the agreement in which plaintiff should pay the defendant the sum of $500 as an attorney fee, and if the defendant was successful in said litigation, or if the temporary injunction involved in said suit should be dissolved, then the plaintiff should pay an additional fee by the assignment and transfer of 300 shares of capital stock of

Rockford Screw Products Co., and that the plaintiff should also pay and advance any and all costs necessary to properly defend said cause; that after said agreement was signed, the said appellant paid to the defendant the sum of $500, and that the defendant made demand on the plaintiff for the sum of $150 for costs, which he, the plaintiff, paid; that shortly after the contract was signed, as aforesaid, he, the plaintiff, did transfer 300 shares of said capital stock of the Rockford Screw Products Co., to the said Carl Solomonson; that at the time of the transfer of said stock, it was worth approximately $20 per share.

In his petition, the plaintiff stated what the defendant, Solomonson, did in connection with the injunction suit, and alleges that on December 22, 1938, the Rockford Screw Products Co., voluntarily dismissed its suit. The petition further alleges that the fee charged for such services by said defendant, Solomonson, was so grossly excessive, as to amount to a fraud on the plaintiff; that such agreement was so unconscionable, that it was illegal and void. The plaintiff prays that said capital stock now held by the defendant, shall be ordered returned to him, also that the $500 be returned to him and the $150 paid to the defendant, for expenses be returned to him, less such amount as the court finds a reasonable fee for the services rendered by the said Solomonson to the plaintiff.

The cause was heard before the court without a jury, who found the issues in favor of the defendant, so far as the fraud in the contract was concerned, but held that the evidence showed that there had been only $10 expended by the defendant for the costs in the suit, and ordered the balance of $150 to wit; $140 to be returned to the plaintiff. The court entered a decree in conformity with his findings. It is from the entry of this decree that the plaintiff prosecutes his appeal.

The law is well settled that where a fiduciary relation exists between parties, especially as between at-

torney and client, the utmost good faith must be exercised in all dealings by the attorney to his client. One of the earlier cases is *Ross v. Payson,* 160 Ill. 349, and on p. 358, we find the following: "Thus it is said in Story's Equity Jurisprudence, (sec. 310): 'The situation of an attorney or solicitor puts it in his power to avail himself, not only of the necessities of his client, but of his good nature, liberality and credulity, to obtain undue advantages, bargains and gratuities. Hence the law, with a wise providence, not only watches over all the transactions of parties in this predicament, but it often interposes to declare transactions void which, between other persons, would be held unobjectionable.' " In *Jennings v. McConnel,* 17 Ill. 148, Chief Justice SCATES, rendering the opinion of the court, quoted with approval the foregoing language, and said (p. 150): "And this is applicable to contracts or gifts generally, while the confidential relation continues, and is not confined to particular property about which the attorney may have been employed. It is not required that a client should establish fraud or imposition—the *onus* of proof—upon showing the relation when the contract or gift was made, is upon the attorney to show fairness, adequacy and equity; and upon failure to make proof, courts of equity treat the case as one of constructive fraud." The doctrine here announced has never been departed from by this court, but often reiterated. *Alwood v. Mansfield,* 59 Ill. 496; *Laclede Bank v. Keeler,* 109 Ill. 385; *Morrison v. Smith,* 130 Ill. 304; *Elmore v. Johnson,* 143 Ill. 513.

This case has been cited with approval in *Ringen v. Ranes,* 263 Ill. 11; and *Warner v. Flack,* 278 Ill. 303, at p. 307, in which it is said:

"The procuring of the conveyances to the defendants from their client was an independent transaction, entered into after the trust deed had been obtained. The demurrer admits that during the existence of the relation of attorney and client the defendants purchased

their client's property. In such case it is not necessary to show fraud or imposition on the client, but the burden is thrown upon the attorney of proving the perfect fairness, adequacy and equity of the transaction, and upon his failure to make such proof a court of equity will treat the case as one of constructive fraud.''

In the more recent case of *Masterson v. Wall,* 365 Ill. 102, at p. 110, we find the following: ''Where a fiduciary relation exists, the burden of proof is on the grantee or beneficiary of an instrument executed during the existence of such relationship to show the fairness of the transaction, that it was equitable and just and that it did not proceed from undue influence. (*Suchy v. Hajicek,* 364 Ill. 502.) *Allen v. McGill, supra; Rutherford v. Schneider,* 307 Ill. 28; *Pillsbury v. Burns, supra; Dowie v. Driscoll,* 203 Ill. 480.) This rule applies to contracts between client and attorney made during the existence of such relation and afterwards attacked by the client. (*Warner v. Flack,* 278 Ill. 303; *Willin v. Burdette,* 172 id. 117; *Ross v. Payson,* 160 id. 349; *Morrison v. Smith,* 130 id. 304; *Jennings v. Mc-Connel,* 17 id. 148.)''

The law is clearly stated in these cases, that if the relation of attorney and client exists, then if a contract is entered into between the parties, that the burden of proof is upon the defendant to show that the same was entered into fairly, and that the client had been advised fully in regard to his rights in the matter.

The dispute in this case is, whether at the time the contract between the plaintiff and defendant was entered into, namely, on November 28, 1938, the relationship of attorney and client existed. The burden of proof was upon the plaintiff to show that this relationship did exist. The plaintiff testified that he went to see the defendant on November 10, 1938, which was on Saturday. He went there for the purpose of employing Mr. Solomonson to represent him in the then pend-

ing litigation with the Rockford Screw Products Co.; that he discussed the matter with Mr. Solomonson, and went back again on Monday, November 12, and again discussed the matter with him, and further testified as between these dates, and November 28, he had several conversations with Mr. Solomonson in regard to the suit, but that at no time, had he discussed the fees which Mr. Solomonson would expect for his services. Mr. Solomonson claims that he was not employed to represent the plaintiff until November 28, the time the contract was entered into. Mr. Solomonson's own testimony refutes this claim, because he states in his evidence, when he was called as an adverse witness by the plaintiff, as follows: "I do not recall how much time I spent between November 14, and November 21, investigating the authorities and working on the case of Rockford Screw Products Company vs. Henrik Goranson. I did not keep a record of the time I spent on this case. My recollection is that I spent almost all of my time on that matter." Later, the abstract shows: "On November 21, Henrik Goranson and I discussed the possibility of the Rockford Screw Products Company purchasing the stock at a greater figure than the book value. Between November 21, and November 23, I discussed the matter with Frank Maynard, who was the attorney for the plaintiff, meaning (Rockford Screw Products Company.)" If Mr. Solomonson was spending the most of his time in working on the case of the plaintiff from November 14th, to the 21st, and going over to see the attorney for the Rockford Screw Products Company about the settlement of the matter, it seems clear to us that the relationship of attorney and client existed prior to November 28, 1938. We therefore hold, as a matter of fact, that from November 10, 1938, to November 28, 1938, the relationship of attorney and client existed between the plaintiff, Goranson, and the defendant, Carl Solomonson.

The plaintiff having established that the fiduciary relation of attorney and client existed at the time the contract was entered into, the burden then shifted to Mr. Solomonson to show that it was fairly entered into, and that the plaintiff had been fully advised of his rights before the same was signed. The defendant wholly failed in this proof, as he offered none whatsoever, except his own testimony at the time he was called by the plaintiff, as an adverse witness. There is testimony in the record tending to show that a reasonable fee would be as low as $100. According to Mr. Maynard's testimony, who represented the plaintiff in the suit against Goranson, Mr. Solomonson did not spend more than one and one-half hours in court arguing the three motions which he filed to dismiss the suit, and in his opinion, 10 hours would be a reasonable time for a lawyer to prepare himself to defend the suit, and file the motions as filed by Solomonson. Other lawyers in answering a hypothetical question and assuming that Mr. Solomonson put in his entire time from the time that Goranson first called to see him, until the suit was dismissed, placed the fee much higher. Mr. Solomonson is entitled to a reasonable fee for his professional services which he rendered to the plaintiff. However, the contract as entered into between the parties, was so unconscionable that it amounts to a fraud, as against the plaintiff, and should not be allowed to stand.

It is admitted that the plaintiff paid the defendant $150 as expense money, and only $10 was used for that purpose. The plaintiff would be entitled to the return of $140, as the court properly held in his decree. As to the transfer of the stock, and the payment of the $500, it is our opinion that the decree affirming this contract, should be reversed. It is therefore ordered that the cause be remanded to the trial court with directions to fix a reasonable fee for the defendant for his services rendered to the plaintiff, and order that the stock

in question be returned by the defendant to the plaintiff; that if the fee, as allowed by the court, is less than $500, the remainder of the $500 should also be returned to the plaintiff, but if the fee is $500, or more, the cash in his hands that has been paid him by the the plaintiff, should be retained by him and applied on his attorney fee.

*Reversed and remanded with directions.*