Allen B. Kravis *et al.*, Plaintiffs-Appellants, *v.* Smith Marine, Inc. *et al.*, Defendants—(Melvin J. Cole, Appellee.)

(No. 55974;

First District (3rd Division)—September 6, 1973.

*Rehearing denied December 28, 1973.*

Alexander Polikoff, of Chicago, for appellants.

Frank J. Jackey, Jr. and Sidney Z. Karasik, both of Chicago, for appellee.

Mr. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court:

In August 1966 Allen Kravis, his wife Doris, and their children, Karen six years of age and Mark four, were riding in a boat in a channel between two lakes in Lake County, Illinois. The boat, operated by Robert Frankenbush, was struck by a boat driven by a 14-year-old boy, Andrew Korpan. Mrs. Kravis and a child with whom she was pregnant died as a result of the collision. Mark was severely and permanently injured.

The controversy in this appeal is tangential to the litigation which ensued from the accident. In his need for legal assistance, Kravis either turned to a family friend and distant relative, Attorney Melvin J. Cole, or Cole volunteered to help him. In either event, extensive services were performed for Kravis who became the administrator of his wife's estate and the guardian of his son, and the controversy is over Cole's fee for those services. Specifically, this is an appeal by Kravis from a court order which determined the amount of the fee.

The legal services rendered Kravis fall into three stages: those performed by Cole alone, those done in conjunction with Attorney John P. Kennelly and those done in conjunction with Attorney Lawrence L. Kotin.

Cole personally handled all probate and insurance matters. He opened an estate for Doris Kravis and one for her unborn child, filed a petition for a successor trustee for shares of stock held by Doris for her children, secured letters of administration, filed inventories, arranged for the guardianship of Mark and rehabilitation assistance for him and obtained

all necessary court orders. Kravis executed the relevant documents and accompanied Cole to court whenever his presence was required. Cole advanced court costs and bond premiums and paid the court reporters himself. He received no expense money from Kravis and asked for none as he expected to be reimbursed out of the recoveries anticipated in the wrongful death and personal injury cases from the defendants to whom he had mailed notices of attorney's lien in September 1966.

The personal injury case presented problems and Cole thought it would be advisable to retain the services of an attorney who specialized in that field of law. He and Kravis considered the names of five or six attorneys and settled on John Kennelly. Cole talked to Kennelly who said he would take the case; they agreed that Kennelly would receive one-third and Cole two-thirds of whatever fee was earned. Cole and Kravis conferred with Kennelly on October 1st and retained him. Kravis was not asked to sign a contract and no mention was made of fees. Kravis assumed that Kennelly's charge would be proper.

Kennelly and Cole filed a two-count complaint against Andrew Korpan and five other defendants; count one was for the death of Mrs. Kravis, count two was for the injuries to Mark. The complaint was amended to include William Farrar the owner of the boat driven by Korpan, and Frankenbush the operator of the boat in which the Kravis family was riding. A second complaint was filed for the death of the unborn son, which was later dismissed. The complaints and the amendment were signed by Cole and Kennelly as attorneys for Kravis. Kennelly sent interrogatories to Cole who discussed them with Kravis preliminary to his answering them. After a year and a half went by Kravis became restless and complained to Cole about the lack of progress. Cole related this to Kennelly and Kennelly submitted a written report to him which Cole turned over to Kravis. Later Kennelly decided to withdraw as counsel because he was limiting his practice to aviation accidents and could no longer give the case his personal attention. Cole tried to persuade him to stay and offered him one-half of the fee but Kennelly said he would not reconsider his decision to step out for less than two-thirds. Cole requested a personal meeting but it did not materialize and Kennelly was advised that Kravis was employing another attorney in his stead. Kennelly did not request compensation for the work he had done; he only asked reimbursement for his expenditures.

Kennelly formally withdrew in April 1968 and Lawrence Kotin (whom Cole recommended and Kennelly approved) was substituted for him. The substitution, signed by Kravis, was prepared by Cole. The arrangement was completed in Kotin's office where Kotin dictated the following contract in Kravis' presence:

## "CONTRACT

May 13, 1968

I hereby employ LAWRENCE L. KOTIN and MELVIN J. COLE as my attorneys to represent me in a claim for damages against persons responsible for injuries sustained by my son, MARK, a minor, and for the death of my wife, DORIS, in a motor boat accident which occurred on August 30, 1966 in a channel on the chain of lakes near Fox Lake, in the State of Illinois. I agree to pay them the statutory fee, subject to the approval by the appropriate court, in connection with both claims and, in addition, thereto to reimburse my said attorneys for any and all costs incurred necessary to the prosecution and preparation of this said law suit or settlement.

Name *Allen B. Kravis*
Administrator and Individually
Address 8539 Springfield Ave.
Skokie, Illinois 60076

We, LAWRENCE L. KOTIN and MELVIN J. COLE, agree to render services for the said statutory fee and to make no charges if no recovery is made by way of suit or settlement.

*Lawrence L. Kotin*"

Cole and Kotin had previously agreed to divide equally any fees which might be received. Kotin took on the responsibility for the case and did most of the work. Although he dealt more directly with Kravis than Kennelly did, Kotin consulted Cole from time to time; Cole's name and sometimes his signature appeared on pleadings and other papers as co-counsel; now and then Kravis signed and swore to petitions that bore Cole's name. Cole also attended some discovery hearings and a pre-trial conference.

In May 1970, $100,000 was received from Frankenbush in exchange for covenants not to sue and Kravis was called to Kotin's office to approve distribution petitions. An entry in one of the petitions stated:

"Lawrence L. Kotin and Melvin J. Cole, attorneys' fees for legal services as to this settlement and distribution, 25% of $99,000 * * * $24,750.00"

When Kravis re-examined the petitions he particularly noted this entry. He asked Kotin about it and was told that Cole was to receive 50% of all fees. Kravis said this was the first he knew this and inquired how it could be changed. Kotin suggested that he talk to Cole. He did so and Cole acknowledged that he was to receive one-half of the fees; he said this was the customary arrangement between the lawyer who forwarded a case and the one who handled it and that his arrangement with Kennelly

was for an even higher percentage: two-thirds of the fees. Kravis protested that Cole had not informed him of either arrangement; that if he had known he would not have approved them and would have secured an attorney himself. Cole replied that he would have had to pay the same total fee to any attorney. Kravis answered that since talking to Kotin he had learned that many attorneys would charge less if a forwarding fee was not involved. Cole did not agree that this was so and said they would talk later.

In June 1970 Cole received $12,375 pursuant to the disbursement order. Kravis had not heard from Cole and, in October, he called him. Cole offered to keep his share of subsequent recoveries at 12½% even if they were the result of trials. Kravis replied that this was ridiculous; that Cole had already been paid more than he was entitled to, that he had not revealed he was to be paid anything; that in Kravis' opinion he had violated the ethical standard for lawyers and that Kravis did not want him in the case from then on. Kravis further stated that he felt Cole had no right to keep the money he had received but would make no point of it if Cole would agree to take no more. Cole refused. (Kotin told Kravis that he would be content to limit his fee to 12½% of the aggregate recovery. Subsequently, a $15,000 settlement was made with Smith Marine and some other defendants, and a $315,000 judgment was recovered against Korpan.)

In November Kravis wrote Cole that their relationship was terminated and threatened to complain to the Bar Association, the courts and the newspapers if Cole persisted in asserting his right to 12½% of the total fee.

Kravis filed a motion pursuant to Rule 14.23(g) of the Circuit Court of Cook County asking that a finding be made that Cole's services were of no value. Cole filed a counter-motion asking that the value of his services be fixed according to his agreement with Kotin. A hearing was conducted at which Kravis, Cole and Kotin testified. The trial court found that Cole's services were valuable and fixed his fee at 12½% of all amounts recovered or to be recovered through negotiation and a fee of 16⅔% in the event of unforeseen obstacles or trials. The order was entered in January 1971 and Kravis' appeal was filed a few days later.

Kravis' major contention in his motion and at the hearing was that Cole was not entitled to any fee because they had no attorney-client relationship. His minor contention was that Cole had no right to a fee even if there was such a relationship because he breached his fiduciary duty of making full disclosure about his fee arrangement with other attorneys. On appeal the emphasis is reversed; the lack of an attorney-client rela-

tionship is subordinated, if not abandoned, and far greater importance is placed on the alleged fiduciary breach.

The trial court found from the evidence that Kravis had engaged Cole to attend to the claims arising out of the collision between the boats and that his entire course of conduct constituted ratification of Cole's role as attorney; that Cole performed valuable services for which he was entitled to compensation. The record confirms the court's finding. The court also stated that he found Cole's testimony credible and Kravis' not. We, too, find it incredible that Kravis, an accountant with a university education, reasonably could have believed that Cole, without his saying so directly or indirectly, would have performed so many time-consuming, professional tasks for him over a period of four years without expectation of remuneration.

When Kennelly was in the case he worked through Cole; his contacts with Kravis were minimal. From this alone Kravis should have realized the important part Cole was taking in the litigation. Moreover, he saw and signed pleadings, petitions and other legal documents for both Kennelly and Kotin that gave Cole's name and theirs as his counsel and Cole's name appeared with their names on some of the outside covers. Kravis never questioned Cole about his participation in these matters nor asked him to stop. If Cole's activities did not make Kravis aware that Cole was functioning as his attorney, the contract executed in Kotin's office certainly did. He heard Kotin dictate the short agreement, the first line of which stated: "I hereby employ Lawrence L. Kotin and Melvin J. Cole as my attorneys * * *." When the contract was typed, Kravis turned to Cole and asked his approval before he signed it. The contract was executed and he was given a copy. Again, we find unbelievable that part of Kravis' testimony wherein he tried to explain why, if Cole was not his lawyer, he signed a contract which said he was: he thought Cole wanted his name associated with the case because if there was a large recovery it would help him professionally.

We can understand why Kravis, as father and guardian, wanted to obtain as much money as possible for his injured son. If legal fees were reduced or eliminated, sizeable sums would be added to his estate. Commendable as Kravis' purpose may be, it cannot be honorably accomplished by depriving his attorney of fair compensation for his toil.

When we turn to Kravis' principal contention—that Cole breached his fiduciary responsibility—a more somber picture emerges. Kravis testified that Cole never told him of his fee-splitting agreements with Kennelly and Kotin. Cole did not deny this. Since Kravis' testimony stands uncontradicted no question of fact or issue of credibility is involved.

■■ It was Cole's duty to make these disclosures. He professes, and we have found, that he was Kravis' attorney before either Kennelly or Kotin was called into the case. He had no fee agreement with Kravis, contingent, per diem or otherwise, so he was working on a quantum meruit basis. He undoubtedly had a contingent fee in mind, as is evidenced by the attorney-lien notices he sent (unbeknown to Kravis) to the original defendants, but he had no such arrangement with his client. An agreement for a contingent fee can never be implied but must be expressly contracted for between the attorney and client. (*Warner v. Basten* (1969), 118 Ill.App.2d 419, 255 N.E.2d 72; *Sullivan v. Fawyer* (1965), 58 Ill.App.2d 37, 206 N.E.2d 492.) When Kennelly entered the case, Cole's professional services changed, insofar as he himself was able to effect the change, from a quantum meruit to a contingent basis. Kravis was not aware of this and it was Cole's obligation to inform him and obtain his approval.

■■ It is a basic tenet of law that a fiduciary relationship exists between an attorney and his client (*Turner v. Black* (1960), 19 Ill.2d 296, 166 N.E.2d 588), and all transactions growing out of such a relationship including contracts for fees are subject to the closest scrutiny. (*Gaffney v. Harmon* (1950), 405 Ill. 273, 90 N.E.2d 785; *Hamilton v. Grady* (1942), 314 Ill.App. 568, 41 N.E.2d 968.) This rule comes into the sharpest focus when a contract is entered into during the existence of the fiduciary relationship. (*Robinson v. Sharp* (1903), 201 Ill. 86, 66 N.E. 299.) The courts of Illinois have given particular attention to contracts made or changed after the relationship of attorney and client has been established; it is generally held that such contracts are presumptively fraudulent. (*Miller v. Solomon* (1964), 49 Ill.App.2d 156, 199 N.E.2d 660; *Jordon v. Ray Schools-Chicago, Inc.* (1964), 49 Ill.App.2d 1, 199 N.E.2d 827; *Awotin v. Abrams* (1944), 321 Ill.App. 304, 52 N.E.2d 827. But see, *Sokol v. Mortimer* (1967), 81 Ill.App.2d 55, 225 N.E.2d 496.) The burden of proof is upon the attorney to show the fairness of the agreement, the utmost good faith, complete disclosure on his part and a full understanding of all the facts and the legal consequences on the part of the client. *Rose v. Frailey* (1957), 10 Ill.2d 514, 140 N.E.2d 711; *Buonougias v. Peters* (1964), 49 Ill.App.2d 138, 198 N.E.2d 142; *Goranson v. Solomonson* (1940), 304 Ill.App. 80, 25 N.E.2d 930.

Instead of disclosing the contingent-fee arrangement, Cole concealed it, and the evidence justifies the inference that he did so intentionally. He did not divulge it when he and Kennelly reached their private understanding; he did not mention it in Kennelly's office when Kennelly was retained and, most significantly, he said nothing about it during the

period Kennelly was contemplating withdrawing from the case. Fees were very much in Cole's mind at this time. His very advantageous arrangement—two-thirds to him and one third to Kennelly—was in jeopardy. Kennelly thought the percentages should be reversed and Cole counter-proposed a fifty-fifty division. Cole told Kravis that Kennelly was stepping aside because he was concentrating his practice in a specialized field of torts, but he did not, when it would have been natural for him to do so, say a word about Kennelly's discontent over the division of fees. He thus suppressed one reason, if not the principal reason, for Kennelly's withdrawal; and he did not reveal the Kennelly agreement until three and one-half years after it was made, and then only by way of justification for the lower percentage he was receiving under his agreement with Kotin.

Kotin and Cole agreed to divide prospective fees equally, but Kravis was not told of this and his consent was not sought. This violation of Cole's fiduciary responsibility was less culpable only because, first, Kravis signed a contract in which he agreed to pay them "the statutory fee" (this was Kotin's phrase; everyone agrees that what he means was 25% of the amount recovered through settlement and 33⅓% of the amount recovered by trial); thus, Kravis knew or should have known that Cole would participate in the fee; second, Kravis signed and approved a 12½% payment to Cole in a petition for distribution; and third, he knew that Cole's 12½% fee and Kotin's fee of 12½% were spread of record by the court's order of distribution.

■■ It was Cole's fiduciary obligation to fully inform Kravis of his discussions with Kennelly and Kotin and obtain his client's approval of the contemplated fee arrangements before he entered into them. The fact that Kravis subsequently signed a contract with Cole and Kotin cannot serve as a ratification of Cole's prior concealment. The non-disclosure of the Kennelly agreement taints the less grievous non-disclosure of the Kotin agreement. (Cf. *Schroeder v. Schaefer* (1970), 258 Ore. 444, 477 P.2d 720.) The conduct of an attorney should be beyond suspicion and he must make a full revelation of all material matters to his client. (*Warner v. Basten*, (1969), 118 Ill.App.2d 419.) At the trial Cole did not meet the burden imposed upon him as an attorney of proving that he completely informed his client of material matters affecting their relationship and that his client completely understood the facts and the legal and financial consequences to himself. The order allotting a percentage of the contingent fees to Cole is therefore reversed.

Although a good case can be made for the proposition that Cole's lack of candor should bar him from receiving any fee, in consideration of the

important work he performed and the equities involved this decision is without prejudice to whatever claim he may assert on a quantum meruit basis for the services he rendered prior to his discharge.

The judgment of the trial court is affirmed as to Cole's being Kravis' attorney and being entitled to remuneration for his services, reversed as to his receiving this remuneration under the Kravis-Cole-Kotin contract, and remanded for further proceedings not inconsistent with this opinion.

Affirmed in part; reversed in part and cause remanded.

McNAMARA and McGLOON, JJ., concur.